**THOMAS AMERICA CORP., Plaintiff,**

v.

**Robert M. FITZGERALD, Defendants.**

**No. 94 Civ. 0262 (CBM).**

United States District Court,
S.D. New York.

July 11, 1997.

1066).

Alfred C. Constants, III, Carella, Byrne, Bain, Gilfillan, Cecci, Stewart & Olstein, Roseland, NJ, for Thomas America Corp.

Robert M. Fitzgerald, Denver, CO, pro se.

## MEMORANDUM OPINION

MOTLEY, Senior District Judge.

Defendant Robert Fitzgerald has made a motion for reconsideration of the court's earlier ruling that no binding settlement agreement had been reached between the parties. Defendant has alleged, and plaintiff Thomas America Corporation ("Thomas America") has admitted, that plaintiffs Chief Executive Officer (CEO), Mr. Thomas Pacconi, mischaracterized a particular piece of evidence upon which the court relied in making its decision. Thus, for this reason as well as the other reasons provided below, the motion for reconsideration is granted and this case is dismissed pursuant to the terms of the settlement agreement. Moreover, as this court has previously ordered, defendant's counsel is directed to appear on July 17, 1997 to show cause why sanctions should not be imposed against him, and Mr. Pacconi is also directed to appear to show cause why he should not be held in contempt.

## BACKGROUND

The facts of the underlying dispute are set forth in this court's previous decision in this case denying defendants' motion for a change of venue and familiarity therewith is assumed. *See Thomas America v. Fitzgerald,* 1994 WL 440935 (S.D.N.Y.1994). To summarize the protracted and muddled history of this case briefly, there have been three prior actions between the parties. In the first action, Fitzgerald and his licensee TT Systems Corporation brought suit in this court against Thomas America alleging violation of one of Fitzgerald's design patents, United States Design Letters Patent No. Des. 297,-532 (the " '532 Patent"). *See Fitzgerald v. Thomas America Corp.,* 92 Civ. 3835(CBM). This action was voluntarily dismissed by the plaintiffs therein in early fall 1992. Shortly after Fitzgerald brought the first action, Thomas America filed a declaratory judgment action against Fitzgerald and TT Systems Corporation in the United States District Court for the District of New Jersey. *See Thomas America Corp. v. Fitzgerald,* 2:92 CV 02351(HLS). In that action, Thomas America sought declarations of the invalidity and non-infringement of both of Fitzgerald's design patents, the '532 Patent and United States Design Letters Patent No. Des. 297,-533 (the " '533 Patent"). However, the complaint in that action was dismissed as against Fitzgerald for lack of personal jurisdiction on April 21, 1993. In the same month, Fitzgerald filed the third action in the United States District Court for the District of Colorado alleging that Thomas America had infringed both the '532 Patent and one of Fitzgerald's trademarks, United States Trademark Registration No. 1,479,454 ("The Country Store Telephone"). *See Fitzgerald v. Thomas America Corp.,* Civil Action No. 93–M–889. On January 6, 1994, this action was dismissed for lack of personal jurisdiction over Thomas America. The instant action is concerned with Fitzgerald's trademarks in two models of telephones, "The Country Store Telephone" and "The Country Line Telephone."

This matter was scheduled to go to trial in September of last year, but shortly before trial was to commence, plaintiff declared bankruptcy in the Southern District of Florida. Plaintiffs counsel has since received permission from the bankruptcy court to proceed with this litigation.

At a pretrial conference held on October 31, 1996, defendant submitted a letter, dated August 28, 1995, which he had written to Mr. Pacconi. The letter proposed a settlement wherein defendant would release plaintiff from any past, present and future claims it might have against plaintiff, and in return, plaintiff would dismiss the present action with prejudice. The offer was to remain open for 48 hours. Mr. Pacconi claimed to have initialed his approval of the terms by writing "I agree. Put it in writing" on the agreement itself. In response to this, the court granted each party approximately one month to submit proposed findings of fact and conclusions of law on the issue of whether a valid settlement agreement was as reached. The court marked a number of documents introduced at the pretrial conference as exhibits, but no testimony was taken.

As part of its proposed findings of fact and conclusions of law, plaintiff argued that the offer contained in the August 28 letter had lapsed before it was accepted. To buttress this claim, plaintiff introduced an allegedly more complete version of the August 28 letter, which is identical to the one submitted by defendant to the court on October 24, 1996, except that it includes a "fax post-it" from a Ms. Pam Meyer to defendant which is dated August 31, 1995. Plaintiff claimed that Ms. Meyer was Mr. Pacconi's secretary and that it was she who sent the fax to defendant on August 31 after Mr. Pacconi had written the words "I agree" on the letter. *Mr. Pacconi stated in his declaration (sworn to under penalty of perjury) that he was the person who attached the "fax post-it" on the letter.* Pacconi Decl. ¶ 4. Thus, it seemed as if the offer, which was made on August 28, 1995 and was to be valid for only 48 hours, was accepted three days later, after it had

lapsed. However, because defendant had never been given an opportunity to respond to the new evidence introduced by plaintiff, the court did not rule at that time but rather gave both parties leave to answer the previously submitted findings of fact and conclusions of law. Though defendant did submit papers, he did not address the issue of lapse, and the court accordingly ruled by order and opinion dated March 27, 1996 that no settlement agreement had been reached and that the parties were to appear for a pretrial conference on April 18, 1997.

After the court had made this ruling, defendant made a request for reconsideration, claiming that the letter introduced by plaintiff was a "fraud" because the "fax post-it" on the letter was not written by Mr. Pacconi or his secretary, but rather was written by defendant's secretary. According to defendant, Mr. Pacconi sent the letter on August 30 to defendant's office, at which time defendant's secretary received it and sent the letter a day later along with a "fax post-it" to defendant, who was in Illinois at the time. Defendant has submitted as part of its request for reconsideration an affidavit from Ms. Meyer which basically corroborates defendant's version of events. Plaintiffs counsel has admitted that this is the case, but has indicated that Mr. Pacconi did not deliberately intend to mislead the court, a rather baffling statement since he must have known that he could not have attached the fax post-it if it came from defendant's secretary and not his own.

## ANALYSIS

In light of the facts recently established, it seems fairly obvious that the contention that the offer had lapsed is no longer a valid one. However, plaintiff has essentially two other grounds upon which he relies in declaring that no valid settlement agreement has been reached [1]. First, he argues that there has been no meeting of the minds, and second, he argues that the bankruptcy had already commenced when Mr. Pacconi made this alleged agreement and that he did not have the

---

1. The court did not address these grounds previously because there was no need. If Mr. Fitzgerald's offer had lapsed, as seemed to be the case earlier, whether or not the agreement was invalid on other grounds was totally irrelevant.

authority to bind plaintiff when it was in bankruptcy.

## I. Meeting of the Minds

Under American law generally, "a contract is formed when all of the contracting parties express an intent to be bound and where all of the essential terms of the agreement have been spelled out." *International Minerals and Resources v. Pappas*, 96 F.3d 586, 593 (2d Cir.1996). Plaintiff argues that the letter did not reveal an intent to be bound by the terms indicated therein and that subsequent actions taken by the parties demonstrated this. Plaintiff points specifically to the fact that defendant sent a proposed settlement agreement to Mr. Pacconi on September 6, which he would not have done had an agreement been formed in late August. Furthermore, plaintiff argues, throughout 1995 and early 1996, defendant's counsel made repeated references to "settlement negotiations" and "settlement proposals" in correspondence with this court and the bankruptcy trustee. Finally, plaintiff states that defendant would not have requested mediation in April of this year had he truly believed that a settlement was formed; rather, he would have brought this matter up with the court directly.

However, plaintiff would need far more evidence than that with which he has provided the court in order to succeed on this ground. The letter clearly makes an offer which any reasonable offeree would understand to be legally binding if accepted [2]. The strongest evidence that the letter is intended to be a legally binding offer is the final sentence of the letter, in which defendant indicates that the offer would be valid for 48 hours. Such a statement is nonsensical if the letter was not intended to be legally binding upon acceptance. Thus, while it is true that defendant's counsel later made references to pending "settlement negotiations" and that he did request mediation in April of 1996 rather than move to enforce a settlement, the evidence upon which plaintiff relies is simply not enough to overcome the plain meaning of the August 28 letters [3].

## II. Bankruptcy

### A. Commencement

Defendant had argued previously that the bankruptcy did not commence with its filing (which occurred on August 18, prior to Mr. Fitzgerald's offer), but rather when a notice of commencement of bankruptcy was sent to the creditors (which occurred on September 8, after the offer was made and accepted).

However, the Bankruptcy Code clearly indicates otherwise. 11 U.S.C. § 301, the section of the Code which deals with voluntary bankruptcies, states in relevant part:

A voluntary case ... is commenced by the filing with the bankruptcy court of a petition ... by an entity that may be a debtor under such chapter. The commencement of a voluntary case under a chapter of this title constitutes an order for relief under such chapter.

Thus, plaintiff is correct in stating that a bankruptcy commences with its filing. Contrary to defendant's contention, the notice to creditors required under 11 U.S.C. § 342 has nothing to do with the commencement of the bankruptcy.

---

2. Mr. Pacconi submitted a declaration (the same one in which he misled the court) in which he insists that he had no intention of signing a written agreement and that he was only asking for a formal written proposal by defendant in order to evaluate it properly. Leaving aside Mr. Pacconi's dubious capacity for honesty, it is axiomatic contract law that what a party actually intended is not relevant; rather, the question is what a reasonable person in the party's position would have intended, and no reasonable person would have put the words "I agree" on defendant's letter without intending to be bound by it.

3. Indeed, as the court noted at the October 31 conference, some of defendant's actions were not at all inconsistent with an intent to be bound by the August 28 letter. For example, the fact that defendant requested mediation rather than bring this matter up directly with the court is perfectly in keeping with the dilatory tactics in which he has engaged since the start of this litigation. While employing such tactics is hardly noble and may even be sanctionable, *see* Sec. II *infra*, it has no bearing on whether a settlement agreement was concluded between the parties.

## B. Authority of Debtor's Agents After Commencement of Bankruptcy

However, while it does seem that the bankruptcy had already commenced by the time that the contract was signed, it is far from clear that this means that Mr. Pacconi did not have the authority to bind plaintiff. First of all, the bankruptcy trustee may not have been appointed by the time that Mr. Pacconi signed the letter. If a trustee had not been appointed, then Mr. Pacconi may in fact have been authorized to dispose of plaintiff's assets. *See* 5 COLLIER ON BANKRUPTCY ¶ 549.02[1] ("In a typical voluntary chapter 7 case, a debtor remains in possession of property after the commencement of the case until a trustee or interim trustee is appointed and qualifies. Once a trustee is appointed and qualifies, the debtor must turn over to the trustee property not claimed as exempt by the debtor.... During the period of its control, the debtor may dispose of property ... by transferring it for less than equivalent value, however improper that may be.")

 Moreover, even if a trustee was appointed by the time that Mr. Pacconi signed the letter, it would be inappropriate for this court to refuse to enforce the agreement because it was unauthorized. Plaintiff is basically asking the court to "avoid" an unauthorized transfer of its assets. However, the proper procedure for such an avoidance would be for the trustee to seek an avoidance in the Bankruptcy Court pursuant to 11 U.S.C. § 549 (West 1993), which deals with this very issue[4]. Under the Bankruptcy Code, it is the trustee who is in charge of the bankruptcy estate once a Chapter 7 case is filed, and § 549 gives him the responsibility to ensure that the estate was not depleted by unauthorized transfers of property. This court is simply not in a position to rule on such matters.

## III. Sanctions

As the court indicated at a conference on May 2, 1997, the manner in which the instant matter has been litigated by the parties raises serious ethical questions. Thus, the court adheres to its order dated June 25, 1997 directing (1) that Mr. Pacconi appear on July 17, 1997 and show cause why he should not be held in contempt for filing a misleading document with the court and (2) that Mr. Zito also appear on July 17, 1997 and show cause why sanctions should not be imposed against him for failing to inform the court of the misleading nature of the document even after being given leave to respond to plaintiffs submissions.

## CONCLUSION

For the foregoing reasons, the court holds that the settlement agreement between the parties is valid and enforceable, and Mr. Pacconi and Mr. Zito are directed to appear on July 17, 1997 in order to show cause as to why they should not be sanctioned.

---

4. 11 U.S.C. § 549 reads in relevant part:
 (a) ... the trustee may avoid a transfer of property of the estate (1) that occurs after the commencement of the case; and (2) ... that is not authorized under this title or by the court.